IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:21-cv-00061-M

| | | |
|---|---|---|
| TONYA BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ANSWER TO AMENDED** |
| | ) | **COMPLAINT AND COUNTERCLAIM** |
| COASTAL HORIZONS CENTER, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Defendant, Coastal Horizons Center, Inc. and responds to Plaintiff's Amended Complaint as follows:

## FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

## SECOND DEFENSE

Defendant has at all relevant times hereto acted in good faith with regard to Plaintiff, such good faith pled in defense of Plaintiff's claims.

## THIRD DEFENSE

Any adverse employment actions taken by Defendant with regard to Plaintiff were taken for legitimate, non-discriminatory and non-retaliatory reasons.

## FOURTH DEFENSE

Plaintiff's damages, if any, are limited by the doctrine of after-acquired evidence.

## FIFTH DEFENSE

Defendant pleads the doctrine of employment at will in defense of Plaintiff's claims.

## SIXTH DEFENSE

Plaintiff's alleged damages are limited to the extent Plaintiff has failed to mitigate such damages.

## SEVENTH DEFENSE

Plaintiff's claims for unpaid wages are barred by the doctrines of waiver and/or estopped.

## EIGHTH DEFENSE

Plaintiff's claims for unpaid wages are barred to the extent Plaintiff performed work without the knowledge or consent of Defendant.

## NINTH DEFENSE

Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands.

## TENTH DEFENSE

To the extent Plaintiff is otherwise entitled to any recovery, which is denied, such recovery should be reduced or eliminated due to the doctrine of after-acquired evidence.

## ELEVENTH DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver and/or accord and satisfaction.

2

4849-1552-2298, v. 1

## ANSWER

Defendant answers the allegations contained in the correspondingly numbered Paragraphs of Plaintiff's Amended Complaint as follows:

1. Admitted that Plaintiff's Amended Complaint purports to bring claims under the statutes referenced in this paragraph. Except as expressly admitted herein, denied.

2. Denied.

3. Admitted upon information and belief.

4. Admitted, except denied that Defendant has any owners.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted that Plaintiff filed a retaliatory discrimination Complaint with the NC Department of Labor on or around May 5, 2021. Except as expressly admitted herein, denied.

9. Admitted.

10. This paragraph contains statements of law to which no response is required. To the extent a response is required, denied.

11. Admitted.

12. Admitted, although denied that Jennifer Burns is the sole individual within the finance department responsible for such functions.

13. Admitted.

3

4849-1552-2298, v. 1

14. Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

15. Denied.

16. Admitted that Rasino did recommend Plaintiff for termination. Admitted that Plaintiff went from a full time to a part time employee. Except as expressly admitted, denied.

17. Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

18. Denied.

19. Admitted Dillahunt was the designated government representative and contact for Defendant's HUD program throughout Plaintiff's employment. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies the same.

20. Defendant is without knowledge or information sufficient to admit or deny the allegations regarding Plaintiff's communications to Rasino in 2017 and 2018 and therefore denies the same. The remaining allegations of this paragraph are denied.

21. Admitted.

22. Admitted.

23. Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

Case 7:21-cv-00061-M    Document 16    Filed 10/08/21    Page 4 of 22
4849-1552-2298, v. 1

24. Denied Plaintiff was provided several inaccurate reports from Burns. Admitted Burns was responsible for withdrawal of HUD grant money and paying HUD expenses. Defendant is without knowledge or information sufficient to admit or deny the allegations regarding what Plaintiff believed and therefore denies the same. Except as expressly admitted herein, denied.

25. Defendant is without knowledge or information sufficient to admit or deny the allegations regarding what Plaintiff was comfortable or uncomfortable with and therefore denies the same. Denied that there were inconsistencies Burns was unable to rectify. Admitted Plaintiff expressed concerns to House and Jalbert, and they said they would look into it. Except as expressly admitted herein, denied.

26. Admitted that Plaintiff continued to address concerns with House and Jalbert. Except as expressly admitted herein, denied.

27. Admitted that in January or February of 2018, House and Plaintiff had a phone call during which House instructed Plaintiff to submit the APR by the deadline. Defendant is without knowledge, information or recollection sufficient to admit or deny the remaining allegations in this paragraph and therefore denies the same.

28. Admitted that Plaintiff submitted the APR for FY 2016-2017. Defendant is without knowledge or information sufficient to admit or deny the remaining allegations in this paragraph and therefore denies the same.

29. Admitted that House made an effort to get Plaintiff to focus more on case management and less on finance. Defendant is without knowledge or

5

4849-1552-2298, v. 1

information sufficient to admit or deny the allegation that Plaintiff included comments in the FY2016-2017 APR in order to inform HUD of alleged financial inaccuracies. Except as expressly admitted herein, denied.

30. Admitted that on or about February 9, 2018, House and Jalbert met with Barber to discuss concerns she was raising about alleged financial inaccuracies. Admitted that Plaintiff was assigned to a new supervisor, Rachel Petrosky. Admitted Plaintiff was relocated to a different office. Except as expressly admitted herein, denied.

31. Denied.

32. Admitted.

33. Denied.

34. Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

35. Admitted that, on or about June 25, 2020, Plaintiff sent Ricci an email similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

36. Admitted that, on or about June 25, 2020, Ricci sent Barber an email similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

37. Admitted that, on or about June 25, 2020, Ricci sent Barber an email similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

6

4849-1552-2298, v. 1

38. Denied.

39. Admitted that, on or about August 27, 2020, Ricci sent Barber an email similar or identical to the text of the communication quoted in this paragraph. Admitted Ricci knew Plaintiff expressed concerns to Dillahunt. Except as expressly admitted herein, denied.

40. Admitted that, on or about September 8, 2020, Ms. Barber was issued a written reprimand. The terms of such document speak for themselves. Except as expressly admitted herein, denied.

41. Admitted.

42. Admitted that on or about September 16, 2020, Plaintiff was issued a new written reprimand. The terms of such document speak for themselves. Except as expressly admitted herein, denied.

43. Admitted that, on or about September 16, 2020, Plaintiff sent an email to Margaret Weller-Stargell, Andy Jones and Colin Hackman and that such email was similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

44. Admitted Plaintiff spoke with Defendant's auditors. Except as expressly admitted herein, denied.

45. Admitted Plaintiff worked with Defendant's outside auditor. Admitted Defendant's auditor reported his findings to Defendant's CEO and Board of Directors in January, 2021. Except as expressly admitted herein, denied.

46. Denied.

7

4849-1552-2298, v. 1

47.     Admitted that, on or about January 5, 2021, Plaintiff sent an email to Burns and other members of Defendant's management team and that such email was similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

48.     Admitted that, on or about January 8, 2021, Defendant held a conference call to discuss issues related to the HUD program. Admitted that during such call there was discussion regarding a vacant unit on which Defendant needed to stop paying. Except as expressly admitted herein denied.

49.     Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

50.     Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

51.     Defendant is without knowledge or information sufficient to admit or deny what Dillahunt communicated to Plaintiff and therefore denies allegations of such communications. Except as expressly admitted herein, denied.

52.     Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

53.     Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

54.     Denied.

55.     Admitted that, on or about January 13, 2021, Plaintiff sent an email to members of Defendant's management team, with bcc to Dillahunt, and that such

8

4849-1552-2298, v. 1

email was similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

56. Admitted that, on or about January 14, 2021, Dillahunt replied to Plaintiff's January 13, 2021 email and that such reply was similar or identical to the text of the communication quoted in this paragraph. Except as expressly admitted herein, denied.

57. Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

58. Admitted that, on or about January 19, 2021, Defendant informed Plaintiff she was being terminated. Admitted Defendant provided a termination letter similar or identical to the communication quoted in this paragraph. Except as expressly admitted herein, denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

64. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

65. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

9

4849-1552-2298, v. 1

66.     Admitted.

67.     Denied.

68.     Denied.

69.     Defendant is without knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies the same.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

74.     This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

75.     This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

76.     Admitted.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

4849-1552-2298, v. 1

82. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

83. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

84. Admitted.

85. Admitted.

86. Denied.

87. Denied. Denied Plaintiff was entitled to any overtime compensation.

88. Denied.

89. Admitted Plaintiff expressed concerns about pay. Except as expressly admitted herein, denied.

90. Denied.

91. Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

92. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

93. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

94. This paragraph contains a statement of law to which no response is required. To the extent a response is required, denied.

95. Admitted.

96. Admitted.

4849-1552-2298, v. 1

97. Denied.

98. Denied. Denied Plaintiff was entitled to overtime compensation.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

104. Admitted.

105. Admitted.

106. Denied.

107. Admitted that failure to pay overtime in some circumstances could constitute a violation of the NCWHA. Except as expressly admitted, denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Defendant incorporates its responses to the foregoing paragraphs as if fully set forth herein.

114. This paragraph contains a purported recitation of a North Carolina Statute and not a factual allegation and therefore no response is required. To the

4849-1552-2298, v. 1

extent a response is required, the allegations of this paragraph are denied to the extent they are inconsistent with the language of the statute cited therein.

115. Denied.

116. This paragraph contains a purported recitation of a North Carolina Statute and not a factual allegation and therefore no response is required. To the extent a response is required, the allegations of this paragraph are denied to the extent they are inconsistent with the language of the statute cited therein.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

ALL ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT NOT EXPRESSLY ADMITTED HEREIN ARE DENIED.

## **COUNTERCLAIM**

NOW COMES Defendant Coastal Horizons Center, Inc. and states as follows for its Counterclaim against Plaintiff.

### **Parties**

1. Upon information and belief, Plaintiff Tonya Barber ("Barber") is a citizen and resident of New Hanover County, North Carolina.

2. Defendant Coastal Horizons Center, Inc. ("CHC") is a non-profit corporation organized under the laws of the state of North Carolina.

4849-1552-2298, v. 1

## Jurisdiction and Venue

3.  Barber instituted this action and brings claims under federal statutes, including the FCA and FLSA. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.  This Court has supplemental jurisdiction over the Counterclaims asserted by CHC pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this judicial district because a substantial part of the events or omissions giving right to this action occurred within this judicial district.

## Facts

6.  CHC incorporates its responses to the allegations of Barber's Complaint as if fully set forth herein.

7.  CHC is a non-profit corporation providing assistance to persons in need of services such as mental health, substance abuse, crisis counseling and housing. CHC is a sizeable organization and employs more than 500 individuals in North Carolina.

8.  In or around 2016, CHC hired Barber as a case manager in CHC's Housing and Urban Development ("HUD") program.

9.  Barber remained employed with CHC until her involuntary termination on or about January 19, 2021.

10.  At the time of her termination, Barber was employed as a part-time case manager in CHC's HUD program.

14

4849-1552-2298, v. 1

11. As part of the services it offers clients of its HUD program, CHC will sometimes purchase gift cards to various retailers. CHC distributes these gift cards to individuals it serves under its HUD program in order to assist them in purchasing certain necessities.

12. Following Barber's termination, CHC discovered that thousands of dollars in gift cards to Target were unaccounted for and missing. These gift cards were purchased with HUD funds and were entrusted to Barber while she was employed at CHC.

13. On or about March 5, 2021, CHC's Vice President of Clinical Services Kenny House emailed Barber inquiring into the whereabouts of the unaccounted-for gift cards.

14. In response to House's March 5, 2021, email, Barber emailed House and provided him with a Memorandum of Understanding ("MOU") pursuant to which Barber contended the gift cards in question were distributed, or were to be distributed. That MOU is attached hereto as Exhibit 1.

15. The MOU purports to be between CHC's HUD program and the "UNCW Office of Student Leadership and Engagement's Volunteer Outreach."

16. UNCW has no program or subdivision called the "Office of Student Leadership and Engagement's Volunteer Outreach" or anything similar.

17. The MOU purports to be signed by Barber on behalf of CHC. As a part-time employee, Barber did not have the authority to enter into an MOU on behalf of CHC.

4849-1552-2298, v. 1

18.     The MOU purports to bear the signatures of a "Kelsey Taylor" and a "Calisha Ford," presumably on behalf of the "UNCW Office of Student Leadership and Engagement's Volunteer Outreach."

19.     UNCW has no record of anyone named Calisha Ford ever being a student, employee or volunteer of UNCW.

20.     Searches show one person named Calisha Ford in the Wilmington, NC area. That Calisha Ford has never been affiliated with a "UNCW Office of Student Leadership and Engagement's Volunteer Outreach" and denies any knowledge of the MOU or its contents.

21.     UNCW has no record of anyone named Kelsey Taylor ever being a student, employee or volunteer or UNCW.

22.     The MOU provides for the assembly of "Infectious Disease Toolkits" to be distributed through local non-profit organizations Nourish NC and the Diaper Bank of NC – Lower Cape Fear.

23.     Nourish NC has no knowledge of the MOU.

24.     No "Infectious Disease Toolkits" assembled by CHC, "UNCW Office of Student Leadership and Engagement's Volunteer Outreach," or any combination of the two have ever been distributed through Nourish NC.

25.     Nourish NC has no knowledge of any plan for distribution of Infectious Disease Toolkits.

26.     Nourish NC has no relationship with a "UNCW Office of Student Leadership and Engagement's Volunteer Outreach."

16

4849-1552-2298, v. 1

27. Nourish NC has no relationship with a Calisha Ford.

28. Nourish NC has no relationship with a Kelsey Taylor.

29. Diaper Bank of NC – Lower Cape Fear has no knowledge of the MOU.

30. No "Infectious Disease Toolkits" assembled by CHC, "UNCW Office of Student Leadership and Engagement's Volunteer Outreach," or any combination of the two have ever been distributed through Diaper Bank of NC – Lower Cape Fear.

31. Diaper Bank of NC – Lower Cape Fear has no knowledge of any plan for the distribution of Infectious Disease Toolkits as referenced in the MOU.

32. Diaper Bank of NC – Lower Cape Fear has no relationship with a "UNCW Office of Student Leadership and Engagement's Volunteer Outreach."

33. Diaper Bank of NC – Lower Cape Fear has no relationship with a Calisha Ford.

34. Diaper Bank of NC – Lower Cape Fear has no relationship with a Kelsey Taylor.

35. With regard to distribution of gift cards, the MOU provides:

- **Gift Cards to Target/Walmart/Walgreens** to be utilized and distributed by the Outreach Team to individuals/families that have limited or no income, have expenses that are required to maintain housing but leave them cost burdened, or have pharmacy needs (copays, prescriptions) and can be transferred to Walgreens/Walmart/Target-CVS.

36. All circumstances indicate that the MOU is a fraudulent, fabricated document created by or at the direction of Barber.

37. The Wilmington Police Department ("WPD") has investigated the missing gift cards and Barber's role in the same.

4849-1552-2298, v. 1

38. CHC has the serial numbers of the missing gift cards and provided the same to the WPD.

39. The WPD obtained records from Target showing that the majority of the gift cards in question have been used to purchase items at Target. The records obtained also identified the particular items that were purchased with the gift cards.

40. The records obtained from Target show that many / most of the gift cards were used to purchase items other than the types of items such gift cards were intended to be used for. By way of example, several of the gift cards were used to purchase cat litter.

41. With respect to many / most of the transactions made with the gift cards, the person making the purchases entered a Target customer loyalty number when making the purchases. The customer loyalty number attributed to such purchases is registered to Tonya Barber.

42. With respect to some of the gift card purchases at issue, the amount of the gift card was not sufficient to cover the entire cost of the purchase, and a credit card was used to make up the difference between the amount of the gift card and the purchase price. The credit card used in such instances belongs to Tonya Barber.

43. Tonya Barber misappropriated the gift cards at issue and has made personal use of them.

44. Upon information and belief, the WPD has charged Barber with one or more felony charges and has issued a warrant for her arrest.

4849-1552-2298, v. 1

## Counterclaim Cause of Action One - Conversion

45. CHC incorporates and realleges the foregoing paragraphs of its Counterclaim as if fully set forth herein.

46. Barber took gift cards belonging to CHC, and meant to be distributed to individuals in need, and used those gift cards for personal gain.

47. Barber's actions amount to the unauthorized assumption and exercise of the right of ownership over the property of CHC and to the exclusion of the rights of CHC.

48. Barber is liable to CHC for conversion.

## Counterclaim Cause of Action Two – N.C.G.S. § 1-538.2

49. CHC incorporates and realleges the foregoing paragraphs of its Counterclaim as if fully set forth herein.

50. N.C.G.S. § 1-538.2 provides that a person who commits an act punishable under N.C.G.S. §§ 14-72, 14-72.1, 14-74, 14-90, or 14-100 is liable for civil damages to the owner of the property at issue.

51. By her actions as described herein, Barber has committed acts punishable under one or more of the statutes referenced in the preceding paragraph.

52. Pursuant to N.C.G.S. § 1-538.2, Barber is liable to CHC for the value of the property she took, consequential damages, punitive damages and attorneys' fees.

## Counterclaim Cause of Action Three – Punitive Damages

53. CHC incorporates and realleges the foregoing paragraphs of its Counterclaim as if fully set forth herein.

19

4849-1552-2298, v. 1

54. Barber's actions as alleged herein above constitute fraud, malice and/or willful and wanton conduct.

55. Barber is liable to CHC for punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

WHEREFORE, Defendant prays:

1. That Plaintiff's Amended Complaint be dismissed, with prejudice;

2. That Plaintiff recover nothing from Defendant;

3. That Defendant be awarded its reasonable costs and attorney's fees incurred in defending this lawsuit;

4. That Defendant be awarded actual, compensatory, consequential, statutory and punitive damages on its counterclaims against Plaintiff;

5. That Defendant be awarded reasonable attorneys' fees and costs incurred in pursuing its Counterclaims against Plaintiff;

6. For a trial by jury on all issues so triable; and

7. For such other relief as may be warranted.

Respectfully submitted, this, the 8th day of October, 2021.

CRANFILL SUMNER LLP

By: /s/ Benton L. Toups
BENTON L. TOUPS
N.C. State Bar No. 28910
PATRICK M. MINCEY
N.C. State Bar No. 38372
101 N. 3rd Street, Suite 400
Wilmington, NC  28401
Telephone: (910) 777-6000

20

4849-1552-2298, v. 1

Facsimile: (910) 777-6111
E-mail: btoups@cshlaw.com
       pmincey@cshlaw.com
*Attorneys for Defendant*

4849-1552-2298, v. 1

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **ANSWER TO AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send a copy to all counsel as follows:

L. Michelle Gessner
GessnerLaw, PLLC
1213 Culbreth Drive, Suite 426
Wilmington, NC 28405
michelle@mgessnerlaw.com
*Attorney for Plaintiff*

This the 8th day of October, 2021.

CRANFILL SUMNER LLP

By:  /s/ Benton L. Toups
BENTON L. TOUPS
N.C. State Bar No. 28910
PATRICK M. MINCEY
N.C. State Bar No. 38372
101 N. 3rd Street, Suite 400
Wilmington, NC  28401
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: btoups@cshlaw.com
pmincey@cshlaw.com
*Attorneys for Defendant*

4849-1552-2298, v. 1