IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:21-cv-00061-M

TONYA BARBER,

    Plaintiff,

v.

COASTAL HORIZONS CENTER, INC.,

    Defendant.

ORDER

This matter comes before the court on the Defendant's Motion for Sanctions, Dismissal, and Default [DE 23]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the Honorable Robert T. Numbers, II, United States Magistrate Judge, issued a Memorandum and Recommendation ("M&R"), recommending that this court grant Defendant's motion and sanction Plaintiff for fabricating evidence in this case by dismissing Plaintiff's claims against Defendant and entering default judgment against her as to Defendant's counterclaims. DE 68. Plaintiff filed an objection to the M&R and Defendant responded to the objection. DE 70, 71. Having reviewed the entire record, the court accepts in part and respectfully declines to accept in part Judge Numbers' recommendation and grants in part and denies in part Defendant's motion as follows.

I.    **Standard of Review**

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord*

*Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Without timely objection, de novo review is unnecessary, and a district court need only check for clear error on the face of the record to accept the magistrate judge's recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Under § 636(b)(1), a party's objections to an M&R must be "specific and particularized" to facilitate district court review. *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007). On the other hand, "general and conclusory objections that do not direct the court to a specific error" in the M&R fall short of this standard. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (concluding that de novo review was still required under these decisions where a pro se litigant had objected to specific factual findings in the M&R).

Plaintiff objects to the "entirety" of Judge Numbers' recommendation, including his findings that she engaged in sanctionable conduct and that she should be subject to both dismissal and default judgment. Defendant expresses no position as to this court's standard of review. The court finds that de novo review of the sanction motion is proper.

## II.     Legal Standards for Authority to Sanction

The court's power to sanction depends, in part, on the party's challenged conduct. When such conduct involves discovery in the action, the Federal Rules of Civil Procedure govern. Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant here, "[p]arties must respond

2

truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why they cannot respond." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014) (quoting *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010)). Notably, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Under Rule 37(c), which governs failures to disclose,

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) or (e) violation is justified or harmless is entrusted to the broad discretion of the district court." *Franklin Livestock, Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, 251 F. Supp. 3d 962, 967 (E.D.N.C. 2017), *aff'd*, 721 F. App'x 263 (4th Cir. 2018) (quoting *Reed v. Wash. Area Metro. Transit Auth.*, No. 1:14-CV-65, 2014 WL 2967920, at *2 (E.D. Va. July 1, 2014)).

The Supreme Court has also determined that courts have the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). District courts may impose the most severe sanction—dismissal with prejudice—when a party "deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. That is, courts must be "[m]indful of the strong policy that cases be decided on

3

the merits," and, thus, a court may "only exercise its inherent power to dismiss with restraint[.]" *Shaffer Equip. Co.*, 11 F.3d at 462. The Fourth Circuit has determined that, when considering whether to dismiss an action with prejudice, a court must consider the following factors:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Id.* at 462–63. A movant seeking dismissal as a sanction must demonstrate that the misconduct occurred by clear and convincing evidence. *Dewitt v. Ritz*, No. CV DKC 18-3202, 2021 WL 915146, at *4 (D. Md. Mar. 10, 2021); *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09CV529, 2011 WL 1225989, at *20 (E.D. Va. Mar. 29, 2011), *aff'd sub nom. Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013).

## III. Analysis

Judge Numbers found that Plaintiff engaged in sanctionable conduct by presenting in this litigation, both to the court and to Defendant, an email he determined to be fabricated. As punishment for such conduct, Judge Numbers recommends that this court enter default judgment as to Defendant's counterclaims and dismiss Plaintiff's complaint against Defendant. Plaintiff objects to Judge Numbers' findings and recommendations; therefore, this court will first evaluate whether Plaintiff's conduct is sanctionable and, if so, will then fashion an appropriate sanction.

### A. Plaintiff's Conduct

Defendant hired Plaintiff in January 2016 as a full-time case manager of two government-funded programs; her status changed in July or August 2016 to a part-time case manager for a "permanent supportive housing program" under the U.S. Department of Housing and Urban Development ("HUD"). Plaintiff held this position until her employment termination in January

4

2021. Plaintiff alleges that during her tenure with Defendant, she repeatedly raised concerns regarding Defendant's program compliance and financial practices. She claims that Defendant unlawfully terminated her employment in retaliation for her reports of such concerns to HUD.

Plaintiff initiated this action against Defendant on April 9, 2021, alleging violations of the federal False Claims Act, the North Carolina False Claims Act, the Fair Labor Standards Act, and the North Carolina Wage and Hour Act. DE 1. On September 8, 2021, Plaintiff filed an Amended Complaint, adding claims under the North Carolina Retaliatory Employment Discrimination Act and for wrongful discharge in violation of public policy. DE 15.

Defendant responded to the amended pleading on October 8, 2021, by filing an Answer and Counterclaim. DE 16. Defendant asserts state law claims against Plaintiff for conversion, statutory "theft," and punitive damages alleging that, during her employment, Plaintiff used Target gift cards meant for HUD program clients for her personal benefit. *See id.* Defendant also filed a report with the Wilmington Police Department, which has led to criminal charges currently pending against the Plaintiff.

On October 27, 2021, Plaintiff's counsel sent a letter to defense counsel titled, "Rule 11 Notice and Notice of Additional Claims." DE 23-4. The letter asserts that "Rule 11 has been violated because Coastal *knew* that the allegations of Ms. Barber's lack of authority [to use gift cards for HUD program clients] were false and Coastal's signing attorney, Mr. Toups, knew or should have known that these allegations were false and being made for an improper purpose." *Id.* at 4 (emphasis in original). As support, Plaintiff points to an attached copy of a March 27, 2020 email from her supervisor, Eline Ricci, which purportedly granted Plaintiff permission not only to use the gift cards for HUD clients' benefit, but also to enter into a Memorandum of Understanding ("MOU") (DE 34-18) with an organization at the University of North Carolina at Wilmington

5

("UNCW") for the purpose of assembling 300 "kits" (containing over-the-counter medications, emergency food/water, prepaid cell phone cards, and gift cards) to be provided to "people experiencing homelessness" during the COVID-19 pandemic. *See* DE 23-4 at 7. Counsel advises in the letter that Plaintiff "intends to amend her complaint to include additional claims based on Coastal's retaliatory and unfounded counterclaims, including malicious prosecution, abuse of process and/or intentional infliction of emotional distress. In addition, we will be adding Mr. Toups, individually, as a named Defendant as well as potentially Cranfill Sumner." *Id.* at 6.

Thereafter, on December 6, 2021, Plaintiff's counsel sent a letter to defense counsel regarding "discovery deficiencies." DE 23-5. In it, Plaintiff again references and attaches a copy of the March 27, 2020 email stating, "alarmingly, one email received by Plaintiff which is key to disproving Defendant's Counterclaims (and criminal allegations against Plaintiff) appears to have been omitted from Defendant's purported production of all of Plaintiff's emails." *Id.* at 4 (emphasis in original).

Two weeks later, Plaintiff moved for leave to file a second amended complaint, seeking to add claims against Defendant for malicious prosecution, abuse of process, and intentional infliction of emotional distress based on its counterclaims.[1] DE 19. Attached to the motion as its only supporting evidence is a copy of the March 27, 2020 email. DE 20-1.

In its motion presently before the court, Defendant asserts that the March 27, 2020 email "is a fake, fabricated document" and an obvious fraud, for which Plaintiff should be sanctioned by this Court to the fullest extent of its powers." DE 23 at 8, 10. Defendant cites the following evidence supporting its position:

---

[1] Plaintiff's motion was referred to Magistrate Judge Numbers on February 2, 2022, and he denied the motion on July 1, 2022. DE 67. Plaintiff has neither objected to nor appealed Judge Numbers' ruling pursuant to 28 U.S.C. § 636(b)(1).

6

- Eline Ricci is Plaintiff's former supervisor and the purported author of the email. She resigned from employment with Defendant in August 2021 and now works as a manager for another non-profit organization. DE 23-7. Ricci attests that she did not write or send the March 27, 2020 email and believes that the email is a fabrication. *Id.*

- Matthew Daniel, Defendant's information technology ("IT") support analyst, attests that he searched for the email on Defendant's electronic mail server, including emails deleted by the sender and recipient, and could not find it. DE 23-9.

- Daniel did find a different email sent from Ricci to Plaintiff on the same day, March 27, 2020; he notes that the signature block for Ricci is different in form (signature in a different font) and substance (telephone number includes extension) from that set forth in the email submitted by Plaintiff. *See id.*

- Moreover, the signature block in the March 27, 2020 email contains a "logo" depicting Defendant "Celebrating 50 Years" in existence. *See* DE 23-8. Both Daniel and Margaret Weller-Stargell, Defendant's President and CEO, attest that the logo did not exist in March 2020 and was not distributed for use in email signatures until August 2020. DE 23-9, DE 23-9. An email dated August 10, 2020, reflects that Defendant's Development Director, Elizabeth Redenbaugh, provided instructions to Defendant's employees for how to add the logo to email signatures. DE 23-14.

- Russell Gilmore, Security Consultant and Computer Forensic Expert for Protus3, attests that Defendant hired him "to attempt to confirm the authenticity of a March 27, 2020 email from Eline Ricci to Tonya Barber." DE 23-15. Gilmore observed Daniel log in to the electronic mail system and perform a search for "specific" emails including the March 27, 2020 email. Gilmore concluded, "If the Subject Email was ever sent

7

from or received by any user of Coastal Horizons' email server, Mr. Daniel's search would have found it." *Id.* at 2. Gilmore and Daniel also "examined the contents of Eline Ricci's 'sent' folder" and discovered that she started sending emails with the logo sometime between August 7 and August 11, 2020. *Id.* Gilmore opined, "[b]ased on [his] observations, expertise and experience, . . . that the Subject email was never sent from Eline Ricci (ericci@coastalhorizons.org) to Tonya Barber (tbarber@coastalhorizons.org) on March 27, 2020 or any other date." *Id.*

Based on the foregoing, Defendant asks this court to dismiss all of Plaintiff's claims with prejudice, enter judgment in Defendant's favor on all counterclaims, and award Defendant its attorney's fees and costs in this action. DE 23 at 11.

Plaintiff counters that Defendant "has advanced a fantastical theory that would almost be laughable if it was not so damaging, cruel, and abusive to our system of justice." DE 32 at 2. She asserts that she "can and will show that she did not embezzle program resources, nor did she fabricate documents to cover up any wrongdoing." *Id.* Plaintiff contends that she "retained copies of hundreds (if not thousands) of documents over the years related to Coastal's HUD program and her employment. … She used multiple methods over the years, including printing documents, emailing documents to her personal account, taking screenshots, and using document retention software (such as Evernote)." *Id.* at 13; *see also* DE 34-22, ¶ 13. With respect to the March 27, 2020 email, Plaintiff attests that she found a copy of the email on her personal device, which was created on June 3, 2021, during which time she "was still trying to sort through the many documents and files [she] retained from [her] time at Coastal" and "was also completely unaware of the allegations Coastal would later make regarding [her] misuse of gift cards months later." DE

34-22, ¶ 14. Plaintiff attests that she "did not intentionally alter the copy [she] produced of that email, nor [had she] intentionally altered any other document in this case." *Id.*

In response to Defendant's evidence, Plaintiff points out that the email signature on Defendant's "actual" March 27, 2020 email, attached to its motion as Exhibit 7-B (DE 23-11), is different than the signature on the same email produced by Defendant in discovery (*see* Exhibit Q, DE 34-17). She also argues that the copy of the email she produced was created on June 3, 2021, which is three months before Defendant reported Plaintiff's "theft" to the police and four months before Defendant filed its counterclaims. Plaintiff claims she had no knowledge in June 2021 of "the allegations [Defendant] would later make regarding [her] misuse of gift cards." DE 34-22, ¶ 14. In addition, Plaintiff contends that while Ricci denied writing and sending the email, Ricci did not claim that the substance of the message concerning the gift cards and MOU was false. Finally, Plaintiff asserts that Defendant's theory makes no sense, since, at the same time Plaintiff was allegedly using HUD program gift cards for her personal benefit, she was complaining to Defendant's management about the program's financial practices, which prompted two separate outside audits.

The court finds Plaintiff does not sufficiently rebut Defendant's clear and convincing evidence that the March 27, 2020 email is a fake document. Even if the court were to reject Defendant's argument that Ricci's signature line on the subject email is in a font different from that in another email found to have been sent the same day ***and*** were to weigh the testimonies of Plaintiff and Ricci the same with respect to whether they sent and received the email, the other unrebutted evidence—i.e., Defendant's IT specialist, Matthew Daniel, could not find the email on the organization's server; Daniel's search was confirmed by a third-party unaffiliated computer forensic expert, who also opined that the email was never sent from Ricci's email address; and the

9

subject email's signature block contains *both* a telephone number that is different from that in the actual email sent the same day *and* a company logo that had not been distributed to employees until months later in August 2020—clearly demonstrates that the subject email is a sham.

Plaintiff also argues that certain emails she retained following her termination did not appear in Defendant's document production, thus demonstrating that Defendant was also unable to find these emails (DE 32 at 13); however, Plaintiff has produced no persuasive evidence supporting this argument.[2] Further, Plaintiff contends that she was unaware as of June 3, 2021, the date she apparently copied the subject email, that Defendant was concerned about missing gift cards and, thus, would have no reason to fabricate the email.[3] The court is not convinced; on March 5, 2021, Kenny House, Defendant's Vice President of Clinical Services, alerted Plaintiff by email that Defendant was "not able to locate" a box of "Target gift cards that were in [Plaintiff's] possession after purchasing them with HUD funds in February and March 2020." DE 34-4. House asked Plaintiff to identify where they were located if "in a lockbox" and where he might find the "spreadsheet log" used "to track their usage." *Id.* The court finds this email

---

[2] Plaintiff has attached an unsigned "Privilege Log" in which she lists five emails dated January 13, 2021, and January 19, 2021. DE 34-3. Plaintiff asserts that these documents "contain additional, subsequent, communications from Plaintiff to her legal counsel in this matter about her legal claims" and she "is searching for un-marked versions of these underlying documents, and will supplement production if and when they are located." *Id.* Plaintiff also argues that a January 11, 2021 email, attached at DE 34-15, "did not appear in Defendant's production, although earlier emails in the chain did." DE 32 at 13. There is no indication that Plaintiff has produced or presented to the court copies of these listed emails and email "chains" purportedly in her possession. Moreover, it appears that Defendant later produced the January 11, 2021 email in its supplemental responses to Plaintiff. *See* DE 51-2 (the email is part of a chain marked "CONFIDENTIAL Do Not Forward" from Defendant's President and CEO, Margaret Weller-Stargell, who expresses "concern" and that she will "forward to our attorney").

[3] Plaintiff actually attests that she was" completely unaware of the allegations Coastal would later make regarding [her] misuse of gift cards months later." DE 34-22, ¶ 14. To the extent that Plaintiff implies by this testimony that she had no inkling of Defendant's knowledge and concern about the gift cards in June 2021 (*see* DE 32 at 15), the court is not persuaded.

sufficient to put Plaintiff on notice of Defendant's concern about the whereabouts of the "missing" gift cards.

Furthermore, Plaintiff contends that she should have been permitted discovery for the purpose of preparing to rebut Defendant's evidence, but the magistrate judge "close[d] the door on all discovery into the crucial issues raised in Coastal's motion." DE 70 at 4; *see also id.* at 2 ("Ms. Barber was only permitted to obtain outstanding discovery responses that she propounded *before* the Motion for Sanctions was filed." (emphasis in original); *id.* at 9 ("Indeed, to obtain direct evidence of when the logo became available to Ms. Ricci, would require discovery on the issue, including forensic diagnostics of Ms. Ricci's electronic devices. However, the Magistrate Judge refused to allow Ms. Barber to pursue such discovery (or any discovery) by staying all discovery until resolution of the sanctions motion.")).

The record reflects that Plaintiff's contentions are not true. Judge Numbers ordered not only that Defendant respond to certain requests in Plaintiff's *second* set of discovery that he found may be relevant to the sanctions motion (DE 42), but also that Defendant respond to additional requests Plaintiff made during the March 25, 2022 discovery conference that *she* described as necessary to prepare for the upcoming evidentiary hearing on the present motion. Tr. 38-45, DE 54. In fact, Judge Numbers heard not only from counsel but also from the Plaintiff herself as to which documents were necessary to help her prepare to rebut the motion; asked counsel whether there were "any other documents that [defense counsel] should be looking for?"; and obtained Plaintiff's counsel's "okay" as to the relevant time period for the requested documents. *See id.*[4] At the subsequent April 21, 2022 conference, Judge Numbers granted Plaintiff's request for a 45-day continuance of the sanctions hearing, asked Plaintiff's counsel repeatedly whether she needed

---

[4] Judge Numbers denied Plaintiff's request to take depositions, explaining that she would have the opportunity to cross-examine such witnesses at the hearing.

11

additional discovery, granted Plaintiff's requests for document production (Tr. 33-40, DE 63), and would have granted Plaintiff's request to have her expert view Defendant's computer drives, but Plaintiff's counsel ultimately agreed that Judge Numbers should rule "on the papers":

> MS. GESSNER: You've got these competing arguments. It's fake. It's not. And from a clear and convincing beyond a reasonable doubt, I don't see how we'd get there at a hearing. And so the discovery I'm going to need is to see -- have they told us the truth? Do we have it all? Do we have all of the -- before Ms. [Ricci], is there really not another email with that logo on it? My client took a picture of it before any of this even came to be as it relates against her, and has given the Court the reasons why she took the picture, and counsel the reasons why she took the picture. So if the Court wants to rule on the pleadings, I would ask that the Court do that.
>
> ***
>
> THE COURT: Well, I will revisit – I'll go over the pleadings again and see if we need to move forward. And if plaintiff is fine with me ruling on the papers, that's fine. Obviously, if the motion is denied, defendants suffer little hardship. If the motion is granted, your client -- and it's granted the way they want it, your client would suffer hardship. So the hearing, I think, inures to your client's benefit by giving her more opportunity to develop and present evidence. But if you feel comfortable with me ruling on the papers, perhaps I'll do that.
>
> MS. GESSNER: But, Your Honor, the testimony specifically about the email is before the Court in the affidavit, specifically about the presence of the email, not the content, if you will. And so if it's about did she fake the email or not, you have her sworn testimony. You have what she will say about it. You also have what proof they have that she faked this email. Just because it doesn't exist on their system? You have also evidence that there's numerous documents that don't exist. For example, the Apple ---
>
> THE COURT: I don't want to get into this. I'll rule on the papers, which does not necessarily involve argument of counsel. So I've got what's been submitted, and I'll take – I'll figure out what to do going forward with this.
>
> MS. GESSNER: Thank you, Your Honor. Any other questions for me? Can I sit down?

Tr. 40-42, DE 63. Given this exchange, Plaintiff's contention that she should have been granted additional discovery before disposition of the present motion rings hollow.

Furthermore, Judge Numbers properly noted that Plaintiff was never prohibited from seeking information from persons not (or no longer) employed by Defendant, including Eline Ricci, the only person whom Plaintiff "highlights" as an important witness in this matter. *See* DE 32 at 16. Opinion No. 81 of the North Carolina Rules of Professional Conduct provides that "a lawyer [may] interview an unrepresented former employee of an adverse corporate party without the permission of the corporation's lawyer, so long as the employee does not "have the legal power to bind the corporation [and/or is not] responsible for implementing the advice of the corporation's lawyer." *See rFactr, Inc. v. McDowell*, No. 18 CVS 12299, 2023 WL 576534, at *5 n.31 (N.C. Super. Jan. 27, 2023) (citing N.C. RPC 4.2 and Opinion 81); *see also McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 109 (M.D.N.C. 1993) (noting that Opinion 81 explains the rationale behind former N.C. RPC 7.4 (now, RPC 4.2 and 4.3)). There is no indication that Plaintiff attempted to contact Ms. Ricci or any other unrepresented witness in this case, nor attempted to confer with defense counsel about her desire to interview such witnesses.

Plaintiff asserts now that she was entitled under the due process clause to take additional discovery before the sanctions hearing; however, she does not explain how any such discovery might change the analysis. *See, e.g., RDLG, LLC v. Leonard*, 649 F. App'x 343, 350 (4th Cir. 2016) ("Where a sanctioned party "has not made any showing of any possible prejudice[,] ... failure to afford ... notice and hearing before imposition of the sanction [i]s harmless error.") (quoting *Ford v. Alfaro*, 785 F.2d 835, 840 (9th Cir. 1986)). For example, Plaintiff asserts that she should have been able to depose Ricci and to take a Rule 30(b)(6) deposition of a corporate representative regarding Defendant's search for the subject email; however, she does not explain why cross-examining these witnesses at the sanctions hearing would have been insufficient. The court finds

13

Plaintiff fails to demonstrate she has suffered any injury/prejudice by the amount of discovery she was permitted to take for defense of the present motion.

With respect to the current record, Plaintiff contends that the testimony presented by Defendant is "self-serving" and, thus, cannot support the clear and convincing standard. The court disagrees. First, Plaintiff fails to demonstrate how Gilmore's testimony confirming Daniel's email search is "self-serving." Gilmore attests that "[p]rior to December 29, 2021, [he] had never performed any work for or on behalf of Coastal Horizons and otherwise had no relationship with that organization." DE 23-15, ¶ 11. To the extent that Plaintiff seeks to discount Gilmore's testimony because he is a paid expert, the court has considered such fact. Second, "[i]t is of no moment that [Defendant's proffered] fact testimony is 'self-serving.'" *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 n.8 (4th Cir. 2022) (citing *Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1345 (4th Cir. 1991), *on reh'g*, 974 F.2d 1408 (4th Cir. 1992); *see also U.S. v. Sklena*, 692 F.3d 725, 733 (7th Cir. 2012) ("To say that evidence is 'self-serving' tells us practically nothing: a great deal of perfectly admissible testimony fits this description."). Typically, self-serving testimony is rejected only if it contradicts the affiant's earlier testimony or is an opinion completely without corroboration. *See id; see also Genesis Off. Sys., Inc. v. PNC Bank, N.A.*, 639 F. App'x 939, 940–41 (4th Cir. 2016) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("self-serving opinions without objective corroboration [are] not significantly probative"). The court finds it would be improper to reject Defendant's relevant testimonial evidence as "self-serving" in this case.

Notably, at the April 21, 2022 conference, Defendant submitted copies of emails sent by Ricci, fifteen before the time of the subject email and fifteen after that time. DE 72. Plaintiff notes

14

that Ricci's signature line is not consistent in all emails, and she is correct that the email messages reflect two different signature blocks in Ricci's sent emails:

*Eline R. Ricci,* MSW, LCSW
Continuum of Care Coordinator
Coastal Horizons Center
613 Shipyard Blvd. Suite 106
Wilmington, NC. 28412
910-216-6080x132

Sincerely,

Eline R. Ricci, MSW, LCSW
Continuum of Care Coordinator

*See id.* The court will not speculate as to the reason for such difference, but notes that not one of these emails contains a signature block like that in the subject email (i.e., containing the 50th Anniversary logo, reflecting the signature in a particular font, and omitting Ricci's direct telephone extension), as shown below:



*Eline R. Ricci, MSW, LCSW*
Continuum of Care Coordinator
Coastal Horizons Center
613 Shipyard Blvd. Suite 106
Wilmington, NC. 28412
910-216-6080

Moreover, Plaintiff contends that she has retained numerous copies of documents belonging to Defendant; however, she has not produced any email dated prior to August 2020 that contains the organization's anniversary logo nor any emails from Ricci containing an identical signature block (same font and no direct extension).

Following the April 21, 2022 conference, Plaintiff filed a notice of supplemental evidence and attached certain exhibits. DE 60. Plaintiff argues that "[t]opics similar to Ms. Ricci's email

15

at issue were discussed [at a meeting the previous night], including gift cards, providing food to HUD program beneficiaries (purchased with the gift cards) and record-keeping for gift cards." *Id.* The emails Plaintiff cites reflect that a virtual meeting was held among Plaintiff, Ricci, and others on March 26, 2020 from approximately 5:00 p.m. to 7:00 p.m. (DE 60-1 at 3), but Plaintiff does not explain why she sent an email dated March 26, 2020 at 5:14 p.m., which references an individual who appears to be a HUD client, to the meeting attendees during the meeting itself (*see* DE 60-1 at 4). The court is not persuaded that these emails together support Plaintiff's argument. Plaintiff's other arguments in this filing relate to her defense of the Defendant's counterclaims.

In sum, the court finds Defendant has demonstrated by clear and convincing evidence that the March 27, 2020 email produced by Plaintiff in response to discovery and in support of her motion for leave to file a second amended complaint (DE 20-1) is a fake document and that Plaintiff has thus abused the judicial process.

B.     Appropriate Sanctions

Magistrate Judge Numbers recommends that the court sanction Plaintiff for her use of the March 27, 2020 email by entering default judgment in favor of Defendant on its counterclaims and by dismissing Plaintiff's claims against the Defendant. Courts have the inherent power to dismiss an action "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Shaffer Equip.*, 11 F.3d at 462. The Fourth Circuit has noted, "Because the [court's] inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary." *Id.* at 461 (citing *Chambers*, 501 U.S. at 44-45). This court's consideration of the *Shaffer Equip.* factors demonstrates that sanctions less severe than dismissal are appropriate in this case.

16

1.    *Degree of Plaintiff's Culpability and Extent of Her Blameworthiness*

Plaintiff asserts that she "copied" the subject email on June 3, 2021, at which time this action had commenced and she was represented by counsel. Plaintiff's counsel submitted the email to Defendant in support of a Rule 11 letter and in response to discovery, and filed the email as an exhibit in support of Plaintiff's motion for leave to file a second amended complaint, in which Plaintiff sought to bring claims related to the criminal charges and Defendant's counterclaims. The Fourth Circuit instructs courts to avoid dismissing claims "against blameless clients." *Shaffer Equip.*, 11 F.3d at 462. It is undisputed that the subject email was produced by the Plaintiff. Nevertheless, while Plaintiff is not blameless in this case, her counsel has, in defending the present motion, misrepresented to this court the content of the magistrate judge's orders and certain portions of the record, as set forth above. The court finds the first two factors weigh slightly in favor of dismissal.

2.    *Prejudice to the Judicial Process and the Administration of Justice*

For this factor, the court must determine whether the integrity of the judicial process was "so greatly frustrated as to warrant the 'particularly severe sanction' of dismissal." *Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243, 255 (4th Cir. 2013) (citing *Chambers*, 501 U.S. at 45)). Judge Numbers concluded that Plaintiff's use of the March 27, 2020 email in this case "corrupted the vital truth-seeking function performed by courts." DE 68 at 12. The court agrees in part.

Despite Plaintiff's counsel's efforts to downplay the effect of Plaintiff's use of the fake email, the court finds her conduct egregious in threatening to bring suit against defense counsel and his firm, arguing that Defendant's counterclaims are meritless in light of the fake email, and moving to bring additional claims against Defendant based on the email. Further, Plaintiff's use of the email has resulted in substantial time and effort expended by this court and the parties to

17

address and resolve the issue. However, while the progress of this litigation has been curtailed because of the fake email, both parties and the magistrate judge agree that the email is irrelevant to, and will have no impact on, the *Plaintiff's claims* in this case.

The court recognizes, of course, that Plaintiff's conduct has interfered with the court's function in pursuing the truth; however, any harm at this point will be felt primarily by her. *See* Pl. Obj., DE 70 at 16 ("it is clearly Ms. Barber who faces prejudice by a persistent suspicion or inference that all of her submitted evidence is fabricated."). In fact, Judge Numbers has denied Plaintiff's motion for leave to amend her complaint, to which the fake email was attached for support. *See* DE 67. Moreover, given the sanctions this court will impose (described below), the court finds the email will have no adverse impact on the advancement of this litigation. *See Suntrust Mortg.*, 508 F. App'x at 255 ("SunTrust Mortgage's misconduct was certainly egregious and burdened an already stretched court with several months of needless litigation. However, because the unaltered e-mails were preserved, the negative effects of SunTrust Mortgage's bad behavior on the judicial process were only temporary."). The court finds this factor weighs neutrally in considering dismissal as a sanction.

3. *Prejudice to Defendant*

After considering the fake email and other documents produced by Plaintiff, Judge Numbers determined that Defendant will have a substantial burden in "[c]onfirming the authenticity of documents Barber relies on." M&R, DE 70 at 13. While the court agrees that the authenticity of certain documents in Plaintiff's possession appears to be suspect at this stage of the litigation (in which discovery apparently has not concluded), given the adversarial nature of litigation, the authenticity of an opponent's proffered evidence is a common issue to be resolved in civil cases. Moreover, Defendant, like many litigants, will have the opportunity to challenge Plaintiff's credibility if the evidence supports such challenge. Finally, while Defendant asserts

18

that it has expended substantial time and money disputing the fake email, the court finds Defendant has failed to establish that any such injury is significant, particularly given the sanctions to be imposed in this case. *See Suntrust Mortg.*, 508 F. App'x at 255 ("United Guaranty was not significantly prejudiced beyond the attorney's fees and additional expenses it incurred in litigating its sanctions motion."). This factor weighs slightly against considering dismissal as a sanction.

### 4. *Public Interest*

The Fourth Circuit has repeatedly asserted the importance of a "strong policy that cases be decided on the merits." *Shaffer*, 11 F.3d at 462. Where, as here, allegations and evidence have been presented that raise factual issues as to the merits of the case (described more fully below), the court finds this factor weighs against considering dismissal as a sanction.

### 5. *Availability of Other Sanctions*

The Fourth Circuit advises district courts to consider sanctions other than dismissal to "rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future." *Shaffer Equip.*, 11 F.3d at 462. "[A] district court exercising its inherent authority to impose sanctions . . . *must consider the whole of the case* in choosing the appropriate sanction." *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) (citation omitted) (emphasis added). The court finds the following sanctions are appropriate and sufficient to meet the Fourth Circuit's stated objectives.

Plaintiff used the fake email in support of her defense to Defendant's counterclaims and her motion for leave to file a second amended complaint, which was indisputably prompted by the counterclaims. Striking Plaintiff's answer to the counterclaims and entering default against her suffices to punish her and to deter similar conduct; plus, Defendant need not spend time, effort, and/or money litigating Plaintiff's liability for its counterclaims. Defendant will be, however, required to prove its damages, as Plaintiff has produced evidence appearing to support her

19

argument that at least some gift cards were provided directly to HUD clients and/or used to purchase items for such clients. *See* DE 51-7; 51-8.

With respect to Plaintiff's case-in-chief, her requests for "punitive," "liquidated," and "treble" damages, which require findings of willful conduct on the part of Defendant, are dismissed. *See* Am. Compl. ¶¶ 90, 102, 111, 112, 119, and 120, and page 28, DE 15. The action will proceed on the Plaintiff's other requests for relief based on alleged violations stated in Claims One through Six in the Amended Complaint, as well as all requests for relief based on alleged violations stated in Defendant's Counterclaim.

In addition, the Plaintiff will be prohibited from *affirmatively* using the fake email for any purpose in this litigation. This court has found as a fact that the March 27, 2020 email is fake; thus, Plaintiff is also estopped from denying the fabricated nature of the email. Defendant may use the email (in addition to any other suspect documents), if it so chooses, to challenge Plaintiff's credibility.

Finally, Defendant will be awarded reasonable attorney's fees expended in adjudicating the present motion. Notably, the Fourth Circuit has recognized awards of attorney's fees as a less drastic alternative to entries of default, *see Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020), and default judgment, *see Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). Plaintiff and her counsel will be equally responsible for paying such fees. Within thirty days of the entry of this order, Defendant shall file an affidavit and any supporting documents describing the fees expended in litigating its motion for sanctions; Plaintiff will have thirty days thereafter to file any objections to the reasonableness of Defendant's fee request.

## IV.  Conclusion

The fabrication of evidence is a "near-classic example" of an abuse on the judicial process. *For Life Prod., LLC v. Virox Techs. Inc.*, No. 1:20CV00016, 2022 WL 1670097, at *8 (W.D. Va. May 25, 2022) (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).  Plaintiff has abused the judicial process by preparing and using the fake March 27, 2020 email in this litigation.  As such, sanctions are appropriate; however, having considered the whole of the case, the court finds that sanctions less drastic than dismissal and entry of default judgment will meet the objectives of punishing the Plaintiff, compensating the Defendant, and deterring similar conduct in the future. *See Shaffer Equip.*, 11 F.3d at 462.

Accordingly, the court ACCEPTS IN PART AND RESPECTFULLY DECLINES TO ACCEPT IN PART the Memorandum and Recommendation [DE 68] and GRANTS IN PART AND DENIES IN PART Defendant's Motion for Sanctions, Dismissal, and Default [DE 23].  The court orders the following sanctions:

A.   Plaintiff's Answer to the Defendant's Counterclaims (DE 18) is STRICKEN and the Clerk of the Court shall enter DEFAULT against Plaintiff on such counterclaims.

    a.  The factfinder in this case will hear evidence regarding Defendant's request for damages and, therefore, discovery may proceed on such request (*see* DE 16 at 20).

B.   Plaintiff's requests for "punitive," "liquidated," and "treble" damages, which rely on findings of Defendant's "willful" conduct (*see* Am. Compl. ¶¶ 90, 102, 111, 112, 119, and 120, and page 28), are DISMISSED.

C.   Plaintiff shall not affirmatively use (or attempt to affirmatively use) the fake March 27, 2020 email for any purpose during this litigation and she is estopped from denying the fabricated nature of the email.

D.   Defendant is awarded reasonable attorney's fees expended in the adjudication of the present motion for sanctions.

a.   Within thirty days of the date of this order, Defendant shall file an affidavit describing its time expended, hours charged, and fees requested; and

b.   Within thirty days after the date of Defendant's filing, Plaintiff may file any objection(s) to the reasonableness of Defendant's request.

The stay of discovery imposed on February 15, 2022 is LIFTED. This matter is referred to Magistrate Judge Numbers to determine whether additional discovery is necessary and whether the discovery schedule in this case should be modified.

SO ORDERED this ___1st___ day of March, 2023.


_____
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE